CASE No. 825.

VILLALONGA v. HICKS.

1. The judge of probate, holding several bonds payable to himself, secured by mortgages, belonging to an estate in which an infant had an interest, under an arrangement made by all parties concerned, delivered one of the bonds and the mortgage securing it, to the guardian of such infant as a part of his ward's estate, and at the same time, wrote upon the mortgage an assignment of bond and mortgage. Subsequently, the guardian transferred this bond by delivery as collateral security for the payment of a debt due by himself. The ward having afterwards claimed the bond— *Held,* that it was her property.

2. The guardian having died, and a surety upon his guardianship bond having become guardian in his stead—*Held,* that this did not, by operation of law, effect a payment to the second guardian of the amount due upon this bond.

---

Before KERSHAW, J., Barnwell, February, 1879.

This was an action instituted in June, 1876, by John L. Villalonga against Sarah A. Hicks, J. C. Miller and W. H. Kennedy,

upon a bond for the payment of money.    Isabella M. Hickson, upon her own petition, was made a party defendant, and claimed the bond as her property.

The estate of John Hickson, deceased, was sold by the judge of probate for Barnwell county, and a portion thereof, called tract No. 1, was purchased by Sarah A. Hicks, who gave her bond with the two sureties, who are defendants here, and a mortgage of the premises, both payable to I. N. Teague, Probate judge.    When this bond fell due, the principal obligor, together with the three guardians of the three infant children (the heirs-at-law) of John Hickson, met and agreed that J. W. Wilson, guardian of Isabella M. Hickson, should receive the Hicks bond and mortgage as a part of Isabella's distributive share.    The bond and mortgage were then delivered by the Probate judge to J. W. Wilson, the former without any written assignment, but the latter with the endorsement following, to wit:    " I having received satisfaction in full of this mortgage and the bond it was intended to secure, of J. W. Wilson, do hereby transfer the same to said J. W. Wilson, guardian. Witness my hand and seal this 27th December, 1870."    Signed by the judge of probate.    Afterwards, J. W. Wilson transferred, by delivery, this bond to the plaintiff as collateral security for a debt.    It was a matter of dispute here, whether or not this debt was contracted upon the faith of this collateral. The referee found that it was not, but that the bond was delivered to secure indebtedness already existing ; and his findings were confirmed by the Circuit judge.    Villalonga had no actual knowledge of the mortgage, or of the assignment, and did not know that J. W. Wilson was guardian of Miss Hickson, or that the bond belonged to her estate.    The mortgage remained in the possession of J. W. Wilson until his death.    Le Roy Wilson, who had been a surety on J. W. Wilson's guardianship bond, became sole qualified executor of J. W. Wilson's estate, which he fully administered under the order of the court, in an action instituted by himself, to marshal the assets and settle the estate. Thereafter, Le Roy Wilson became the guardian of Isabella M. Hickson.

The plaintiff demanded judgment upon the bond. Isabella Hickson, in her answer, by her guardian *ad litem*, Le Roy Wilson, claimed the bond as her property. The other defendants expressed their readiness to pay the bond to the party entitled to recover upon it. The other facts of the case have no bearing upon the points decided here.

All the issues in the case were referred to Andrew C. Dibble, Esq., as special referee, to hear and determine. His conclusions of law were, *inter alia*, that the bond in suit and the mortgage securing it, were duly assigned to J. W. Wilson, as guardian of I. M. Hickson, and that they then became the property of the ward, and could not be dealt with except for the benefit of the ward; that the subsequent transfer of the bond was a breach of trust by the guardian; that plaintiff was put upon the inquiry by the terms of the bond—that is, by its being payable to the judge of probate, and was, therefore, chargeable with notice that it belonged to the estate of I. M. Hickson; that Le Roy Wilson, not having become guardian until after the settlement of the estate of J. W. Wilson, he, as guardian, had not been paid, by operation of law, the amount due by his testator, the former guardian; that plaintiff was not entitled to relief against Sarah A. Hicks and her sureties; that I. M. Hickson was entitled to no affirmative relief, having demanded none. The report recommended a dismissal of the complaint with costs.

To all these conclusions, exceptions were taken by the plaintiff, and upon them the Circuit judge rendered his decree as follows:

The issues, both of law and fact, arising in this case, were referred to the referee, and by him decided in favor of the defendants. The plaintiff filed exceptions to the report, which were heard before me at the present term. The report must stand as to facts, unless without evidence to sustain it. *Perry* v. *Sullivan*, 6 *S. C.* 310. In this case, however, it is due to the referee to say that there were circumstances upon which he based his opinion, which appear to the court to furnish reasonable grounds for his findings. The distinction he makes as to the character of the notice is not material, since it manifestly appears

what he means by the terms actual or constructive notice. The questions of law involved, and they were chiefly discussed by the counsel at the beginning, are—

*First.* Was there sufficient notice brought home to the plaintiff in this case, to have the effect of subordinating his rights in the premises, to those of the defendant, Isabella M. Hickson? *Second.* Is said defendant precluded from the defence set up on her behalf, on the grounds that the amount due her by her deceased guardian was paid by operation of law, in consequence of the fact that Le Roy Wilson united, in his own person, the office of executor of the deceased guardian, and also the guardianship of said defendant after the death of his testator?

The action here is upon a bond, brought by the plaintiff as assignee. There was no assignment in writing, and plaintiff claimed as transferee by delivery of the bond for value. This would be sufficient to vest in him the beneficial interest and the right of action under the code, if there were no other circumstances to invalidate his claims. The bond, however, was, on its face, payable to the Probate judge of Barnwell county by name. In order to prove his own title, as beneficiary of the bond, plaintiff must derive it from the obligee, mediately or immediately. He must show that it passed from the Probate judge, to whom it was payable, to Wilson, from whom he received it, either by assignment or delivery. In doing this he must necessarily set up, as a part of the proofs of his title, the assignment from the Probate judge to Wilson. *That* discloses the fact that the bond was the property of Hickson, the infant defendant. The guardian had no right to transfer it in consideration of his own debt, or for his own benefit. The transfer was void upon this ground. Plaintiff is held to have notice of the title under which he claims, and upon which he must stand, in order to entitle himself to the character in which he sues. Furthermore, while a purchaser of a legal estate is protected when he acquires it *bona fide*, without notice, there is no such protection to one who has only acquired an equitable title. The transferee, by delivery, has only an equitable title. He takes the bond subject to all prior equities, and want of notice will not protect him.

This disposes of the first question involved.

*Second.* The estate of the deceased guardian was administered by the court, under the bill to marshal assets, and that suit had been determined by the final judgment therein before Le Roy Wilson succeeded to the guardianship of the infant defendant. He had fully accounted in that action for the estate of his testator, which came into his hands, and his administration had closed before he assumed the guardianship. Therefore, the law invoked does not apply, and cannot avail the plaintiff. If, however, that were out of the case, the doctrine would not apply. The new guardian might have been chargeable *prima facie*, had he retained the executorship, and the estate had remained unsettled; but he could have discharged himself by setting up the bond as an investment of his ward's money, and pursuing the same in the hands of the plaintiff, wrongfully withheld from him as guardian. The bond would have remained an asset of his ward, to which he would have been entitled to relieve himself from the liability thrown upon him by the operation of the law insisted upon. His ward would have been entitled to it as a portion of her estate; and the sureties to the guardianship bond would have had the right to have it collected and applied in extinguishment of their liability. The case (*Rhame* v. *Lewis,* 13 *Rich. Eq.* 330,) is conclusive authority that the plaintiff took the bond in question subject to the equities affecting it at the time of the transfer, if he had notice of their existence, or of such circumstances as should have put him on inquiry. That he had such notice appears from the circumstance that the title of assignor, which he acquired, cannot be established without leading necessarily to the knowledge of the prior equities.

In general, it will be presumed that every purchaser has investigated the title of his vendor before completing his purchase; and if the title cannot be made out but through a deed, which gives or leads up to notice of a trust, he will be assumed to have notice of that trust, unless it be shown that inquiry was made, and a reasonable excuse given for the non-delivery of the deeds.

But the court will impute fraud, or gross or willful negligence to the purchaser who omits all inquiry into the title of his vendor. *Hewitt* v. *Loosemore, S. L. & E. Rep.* 40.

If, under such circumstences, he choose to remain in indolent ignorance or indifference to the title, it was a voluntary ignorance and indifference, which ought not to be permitted to serve him against the right of the *cestui que trust.* *Oliver* v. *Piatt,* 3 *How.* 410. To sustain a plea of purchaser for valuable consideration without notice, it must appear that the legal title was purchased, (*Brown* v. *Wood,* 6 *Rich. Eq.* 155,) or, at least, it must appear that the purchaser has the best right to demand a conveyance of the legal title. *Medlicott* v. *O'Donel,* 1 *Ball & Beat.* 171. The plaintiff does not stand in any such position.

It is ordered and adjudged that the exceptions be overruled; that the report be confirmed and be made the judgment of the court; that the complaint be dismissed, and the plaintiff pay the defendants their costs and disbursements—to be adjusted by the clerk.

From this decree plaintiff appealed to this court.

*Mr. Robt. Aldrich,* for appellant.

The position relied upon is, that the assignee of a bond for full value, has the undisputed right to collect it; and the fact that the assignor was the guardian of an infant at the time of the assignment, and the bond constituted a part of his ward's estate, makes no difference, *provided the assignee had no knowledge of these facts* and believed the bond to be the property of the assignor, and there was nothing apparent in the transaction inconsistent with this belief, and to advertise the assignee of the true facts of the case. 13 *Rich. Eq.* 330. Appellant had no knowledge of the facts here. He is charged with knowledge because the bond was payable to the judge of probate. But he did not see the bond until long after the time when he advanced the money, and it was agreed that it should be delivered. He is charged with notice, however, it is alleged, because it was a part of his title, and reliance is placed upon *Adams' Eq.* 151, note 1; *Story's Eq. Jur.,* § 400, and 13 *Rich. Eq.* 330, and 6 *S. C.* 159. But these authorities do not sustain the conclusion that a bond payable to a judge of probate is notice that the bond has been transferred to a guardian for the use of his ward. *Pomeroy on Rem.,* § 124; 4 *Desaus.* 87. A purchaser of a bond is not charged

with inquiry into a chain of title, as the decree says. That is good land law, but inapplicable here. *Oliver* v. *Piatt*, cited by the Circuit judge, shows this distinction. The facts in this case show that the appellant, by the most diligent inquiry, could not have learned, except from J. W. Wilson, that this bond belonged to Wilson as guardian. To sustain our position, we rely upon *Story's Eq. Jur.*, §§ 410, 410a; 4 *Desaus.* 474; 1 *McC. Ch.* 119; 1 *Story's Eq. Jur.*, § 580; 13 *Rich. Eq.* 296; 7 *Johns. Ch.* 150; 96 *U. S.* 57-8. Fraud, and knowledge of fraud, are never presumed, and cannot here be imputed to the plaintiff. There are marked differences between the case at bar and 11 *S. C.* 396, 551, relied upon by respondents. Particular attention is directed to case of *Hill* v. *McIntyre*, 39 *N. H.* The testimony clearly shows that the debt intended to be secured by the assignment was not an antecedent debt.

*Mr. I. M. Hutson*, same side.

It is not claimed that the debt represented by the bond in suit was paid to Le Roy Wilson, as guardian of I. M. Hickson, because he was the *executor* of J. W. Wilson, but because he was the *surety* on the guardianship bond. That this relationship, whereby the present guardian became indebted to himself as such because of his suretyship on the defaulting guardian's bond, is conclusively established by the authorities. 2 *Hill's Ch.* 277; *McM. Eq.* 495; 4 *Rich. Eq.* 14; 2 *Strob. Eq.* 206; 6 *S. C.* 490; 7 *S. C.* 153. As to the position that Le Roy Wilson, as surety, would be entitled to set up the bond against his principal's estate, and follow it as trust property, it is enough to say that he is not a party to this cause, except as a guardian *ad litem;* and that no judgment rendered would bind him, and, therefore, none can be given in his favor.

*Mr. H. M. Thompson*, for respondent.

A guardian has no legal title to the personal or other property of his ward, and consequently can convey none to his transferee; and a sale or transfer by him is voidable at the option of the infant. 3 *Rich. Eq.* 156; 9 *Rich. Eq.* 311; 11 *S. C.* 551. If

more advantageous to the ward to follow the specific property,
she has the right to do so. *Rich. Eq. Cas.* 172. There being
no assignment in writing, nor any legal title acquired, the
plaintiff took, notice or no notice, subject to the ward's equities.
6 *Rich. Eq.* 155; 11 *S. C.* 551. A guardian cannot change the
character of a ward's estate without the leave of the court. 1
*Hill's Ch.* 409. If he does, it must be only when the court
would have sanctioned it. 11 *S. C.* 551. The guardianship
bond is merely subsidiary security for the investments required.
9 *Rich. Eq.* 184. There was enough on the bond to put him
upon inquiry, and, therefore, he is chargeable with constructive
notice. 13 *Rich. Eq.* 312; 1 *White & Tudor's Lead. Cas. in Eq.*
92; *Adams' Eq.* 151, note 1, 158; 1 *Story's Eq. Jur.*, § 400.
To one who omits inquiring, the court will impute fraud or
willful negligence. *S. L. & E. Rep.* 40; 3 *How.* 410. There
must not only be absence of notice, but it must be *bona fide* and
for a present consideration. 13 *Rich Eq.* 328; 6 *S. C.* 159.
The character of executor and guardian never merged in Le Roy
Wilson. And, as surety, he would be subrogated to all the
rights of the ward. *Rich. Eq. Cas.* 172; 7 *Rich.* 112; 13
*Rich.* 312.

March 12th, 1880. The opinion of the court was delivered
by

WILLARD, C. J. The action was, in its original form, in the
nature of an action at law upon a money bond. But Isabella
M. Hickson was, subsequently to the commencement of the
action, made a party, and she interposed a defence, alleging, in
substance, that the bond in suit is her individual property, im-
properly transferred by her guardian to the plaintiff. The pro-
priety of making Isabella M. Hickson a party, and the character
of her answer, are not questioned before us. The case has, there-
fore, assumed the character of one in the nature of interpleader
between the plaintiff and the defendant Isabella, the other de-
fendants, the obligors on the bond, making no objection to pay
the party found entitled to the bond. Although not in form a
strict interpleader, the case is such in substance, and the issues

must be disposed of on the principles of interpleader. It is, therefore, an equitable proceeding.

The court is satisfied with the conclusions of fact found by the referee, so far as the same are material to the view of the law of. the case here presented. The facts are as follows : The bond in suit was the property of the defendant Isabella, held by J. W. Wilson, her guardian, secured by a mortgage. The bond and mortgage were originally made to the Probate judge officially, by whom the bond was delivered without assignment to the guardian as of the estate of his ward, and at the same time the mortgage was duly assigned to such guardian. Subsequently the guardian transferred the bond without assignment to the plaintiff, Villalonga, as security for a personal indebtedness of the guardian to the said plaintiff. The mortgage was never transferred to the plaintiff.

The transfer of the bond to the guardian passed the beneficial interest in the bond, not to the guardian, but to the ward. Had the bond been assigned in form to the guardian, he would have, no doubt, taken the legal title as trustee for his ward. But as there was no assignment effectual to pass the title directly, it could only pass by operation of law ; that is to say, the ward having the beneficial interest would be regarded as clothed with the right of property in the bond, both at law and in equity ; prior to the code, in the name of the obligee to her use, and in equity to her own use ; and since the code, both at law and in equity, in her own name. It is not material to inquire whether the guardian had authority, as such, to transfer the legal title to the bond to the plaintiff, for he has not done so.

The deposit of the bond as collateral security for his individual debt, could only transfer the title to the bond as by operation of law, but the law will not operate such a transfer of interest as against the clear legal and equitable rights of the party having the best right to the property. Assuming that she had merely an equitable interest in the bond, such as she would have had in case the legal title had been transferred to her guardian, but impressed with a trust in her favor ; in that case the only way in which the plaintiff could defeat that equity would be by showing that he had become a *bona fide* purchaser for value without

notice. But he does not occupy that position, for he has not succeeded in clothing himself with the legal title, and that is of the essence of the equitable defence of purchaser for a valuable consideration. All that he has is an equity as between himself and the guardian, individually. That equity is clearly subordinate to that of the defendant, Isabella, both as it regards its character and the time of its origin. If the legal title was in the guardian as trustee, the equity of the *cestui que trust* must have been preferred to any that might be created through any act of misconduct on the part of the trustee, for it was impressed upon the legal title from the moment of its creation, and could only be displaced by an equity to which the *cestui que trust* was, in some respect, subject. An equity claimed through the misconduct of the trustee could not occupy such a position.

But the case is stronger than that supposed, for the defendant Isabella had more than equity. She had the beneficial interest in the bond without any vesting of the legal title in the guardian so as to reduce that beneficial interest to a mere equity. As there was no legal title standing in the way of her beneficial, it was entitled to legal as well as equitable consideration, and, consequently, the defendant Isabella has the legal as well as the best equitable right to the bond and was entitled to recover.

It is contended by the plaintiff that as between the estate of the deceased guardian and the ward there have been transactions that amount, in law, to the payment of the amount covered by this bond in suit. If it had appeared that these transactions, alleged to amount to payment, had taken place prior to the transfer of the bond in suit, from the deceased guardian to the plaintiff, there might be more reason to inquire whether the legal effect of such transactions is such as is claimed for them, for in that case it might well be said that the equity of the ward was extinguished at the time of the transfer of the bond, and that of the plaintiff would remain as the controlling equity; but the fact appears otherwise. The argument in behalf of the plaintiff must rest on one of two assumptions, either that the deceased guardian or his executor had the right to elect to take the bond and become a debtor to the ward for its amount, or that the ward had, in effect, made such an election through the effect of her

appearance in the suit to marshal the assets of the estate of the deceased guardian, brought by his executor and by the decree therein. It is clear that a guardian cannot appropriate the property of his ward by making himself a debtor for the value of such property, so as to invest himself with the title of such property, either in law or in equity. If the ward is bound by transactions amounting to an assent that the guardian shall have the property and become a debtor, then such a transfer of interest may be brought about.

It is contended that under the bill to marshal the assets of the estate of J. W. Wilson, the deceased guardian, brought by Le Roy Wilson, the executor of J. W. Wilson, the account of the deceased guardian with his ward was adjusted on the principle of charging such estate with the amount of the bond assigned to plaintiff, and that the ward being a party to the suit is bound to such mode of statement. It is claimed as a deduction from this that when the transaction assumed the form of a mere indebtedness between the deceased guardian's estate and the ward, in view of the fact that Le Roy Wilson, the present guardian, was surety for J. W. Wilson on his guardian's bond, that the debt became paid by the operation of law. It will not be necessary to examine the soundness of this view, as it does not appear to rest on an adequate basis of fact. It does not appear, from what is disclosed of the accounting in the suit to marshal assets, that this particular bond was brought into the account. The duty of a guardian is to turn over to his ward, specifically, all the property of his ward in his hands and to account for all his pecuniary transactions. It is true that where he has committed waste of his ward's estate, he is bound to account for that; but it does not appear that the accounting established any such *devastavit* as the basis of the accounting on the part of the deceased guardian's estate. Such fact cannot be presumed; and as the question is one of estoppel upon a record, we are not at liberty to speculate as to what matters may have been affected by such record, but must take it at what appears by it. Under such circumstances we cannot say, from the evidence before us, that the deceased guardian's estate has ever accounted for the value of the bond in

suit, and, consequently, no such effect upon the rights of the ward has been accomplished as that contended for.

The decree of the Circuit Court must be affirmed and the appeal dismissed.

McIver and McGowan, A. J.'s, concurred.